DANIEL G. BOGDEN
United States Attorney
BRADLEY W. GILES
Assistant United States Attorney
Lloyd D. George United States Courthouse
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
## -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No: 2:11-mj-510-GWF |
| Plaintiff, | COMPLAINT for violations of: |
| vs. | |
| JACOB LILL; | Title 21 U.S.C. §§ 841 (a)(1) and 846: Conspiracy to Distribute Marijuana |
| EDMUND SCHROBACK; CHRISTOPHER GREEN; | Title 21 U.S.C. §§ 856(a): Maintaining a Drug-Involved Premises |
| KYLE LAIR; RICHARD WHEATON; MICHAEL SAVINO, and | Title 21 U.S.C. §§ 841 (a)(1) and 860(a): Distribution of a Controlled Substance within 1000 feet of a Playground |
| ANA MARTINEZ, | |
| Defendants. | Title 21 U.S.C. § 841 (a)(1): Possession With Intent to Manufacture a Controlled Substance |

## COUNT ONE
### Conspiracy to Distribute Marijuana

From a time unknown, but not later than March 3, 2011, up to and including July 28, 2011, in the State and Federal District of Nevada,

JACOB LILL;
EDMUND SCHROBACK;
CHRISTOPHER GREEN;
KYLE LAIR;
RICHARD WHEATON;
MICHAEL SAVINO, and
ANA MARTINEZ,

defendants herein, did knowingly and intentionally combine, conspire, confederate and agree with each other and others known and unknown to possess with the intent to distribute less than 50 kilograms of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D).

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO
### Maintaining a Drug-Involved Premises

From a time unknown but not later than March 3, 2011, up to and including July 27, 2011, in the State and Federal District of Nevada,

JACOB LILL, and
EDMUND SCHROBACK,

defendants herein, knowingly and intentionally opened and maintained commercial business locations identified as: Completely Legal, located at 3655 S. Durango Suite #19, Las Vegas, Nevada, 89147; Completely Legal 2.0, located at 6401 N. Durango Avenue, Suite #120, Las Vegas, Nevada, 89149; and Completely Legal 3.0, located at 3650 S. Eastern Avenue, Suite #100, Las Vegas, Nevada, 89169, all for the purpose of distributing marijuana, a Schedule I controlled substance, all in violation of Title 21, United States Code, Section 856(a)(1).

## COUNT THREE
### Distribution of a Controlled Substance Within 1000 Feet of a Playground

On or about March 3, 2011, in the State and Federal District of Nevada,

JACOB LILL;
EDMUND SCHROBACK;
CHRISTOPHER GREEN, and
KYLE LAIR,

defendants herein, did knowingly and intentionally distribute, and possess with the intent to distribute, marijuana, a Schedule I controlled substance, within 1,000 feet of the real property comprising a

playground, to wit: a public playground located at Desert Breeze Park, 8425 Spring Mountain Rd., Las Vegas, Nevada, in violation of Title 21, United States Code, Sections 841(a)(1) and 860(a).

## COUNT FOUR
### Distribution of a Controlled Substance Within 1000 Feet of a Playground

On or about March 15, 2011, in the State and Federal District of Nevada,

JACOB LILL;
EDMUND SCHROBACK, and
CHRISTOPHER GREEN,

defendants herein, did knowingly and intentionally distribute, and possess with the intent to distribute, marijuana, a Schedule I controlled substance, within 1,000 feet of the real property comprising a playground, to wit: a public playground located at Desert Breeze Park, 8425 Spring Mountain Rd., Las Vegas, Nevada, in violation of Title 21, United States Code, Sections 841(a)(1) and 860(a).

## COUNT FIVE
### Possession with Intent to Manufacture a Controlled Substance

On or about April 13, 2011, in the State and Federal District of Nevada,

JACOB LILL;
EDMUND SCHROBACK;
ANA MARTINEZ, and
MICHAEL SAVINO,

defendants herein, knowingly and intentionally possessed with the intent to manufacture approximately 200 marijuana plants, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(vii).

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned Complainant, being duly sworn, deposes and states:

## BACKGROUND OF AFFIANT:

1.      Since October 1999, your Complainant has been an officer with the Las Vegas Metropolitan Police Department (LVMPD). Since July of 2004, I have been assigned to the LVMPD

3

1  Narcotics Section tasked with investigating crimes pertaining to the sales, manufacturing and

2  distribution of Controlled Substances.    I am currently assigned to the Drug Enforcement

3  Administration (DEA) High Intensity Drug Trafficking Area (HIDTA) Task Force and am empowered

4  under Title 21, United States Code, Section 878, to conduct investigations of, and make arrests for,

5  offenses enumerated in Title 21 of the United States Code.  Your affiant is currently assigned to

6  Enforcement Group 4 of the DEA's Las Vegas District Office Special Investigations Unit (SIU) and

7  is tasked to conduct controlled substance investigations which include those related to marijuana.

8  Your affiant has received specialized training in controlled substances and marijuana investigations

9  including the manner in which controlled substances are manufactured, distributed, marketed, and

10  consumed.  I have been involved in a large number of investigations dealing with the possession,

11  manufacture and distribution of controlled substances.

12      2.    In both narcotics and narcotics money laundering investigations, your Complainant has

13  utilized a variety of investigative techniques and resources, including physical and electronic

14  surveillance, the analysis of telephone records, and the use of various types of informants and

15  cooperating sources.  Your Complainant has participated and assisted in undercover operations and

16  your Complainant has planned and executed various arrest and search warrants on both the state and

17  federal level.  Your Complainant has interviewed various narcotics traffickers and debriefed many

18  informants.

19      3.    Your Complainant has also received specialized training relating to the indoor and

20  outdoor cultivation of marijuana and the distribution of marijuana.  Your Complainant has also

21  testified in both state and federal court regarding crimes associated with this particular narcotic and

22  its derivatives.  Your Complainant is also familiar with Nevada "medical marijuana" laws and

23  attempts to distribute marijuana through dispensaries.  Your Complainant has been trained in

24  enforcement related specifically to "medical marijuana" and the related laws of Nevada. In my current

25  assignment with the DEA, I have conducted and participated in numerous investigations of marijuana

26

4

cultivation and distribution, and of marijuana dispensaries in particular.  During these marijuana investigations, your Complaintant has conducted and participated in the execution of a large number of search warrants involving marijuana.  During the execution of these search warrants, your Complaintant has become familiar with many of the practices utilized by marijuana traffickers and their associated organizations.  This includes the illegal sale of marijuana by dispensaries, delivery services, cooperatives and business fronts.

4.   As a DEA Task Force Officer, your Complaintant has become familiar with the manner in which controlled substances are distributed within the licit and illicit market, the methods of payment for such controlled substances, and the efforts made by traffickers to avoid detection by law enforcement.   Additionally, your Complaintant has participated in many aspects of marijuana investigations and has been the lead investigator in controlled substance investigations.

5.   This affidavit is based on my training and experience, the training and experience of other law enforcement officers with whom I have consulted as well as information that I have obtained during the course of the investigation. Because this affidavit is being submitted for the limited purpose of requesting arrest warrants as enumerated herein, every known fact of this investigation has not necessarily been set forth, only those which are required to make a showing that there is probable cause to support the issuance of the requested warrants.

**OVERVIEW OF THE INVESTIGATION**

6.   This investigation involves alleged violations of federal narcotics laws prohibiting the trafficking of controlled substances.  The particular controlled substances involved in the alleged violations are marijuana and hashish and hashish oil, Schedule I controlled substances.

7.   Through my training and experience, your Complaintant has learned that, according to 21 U.S.C. § 812(b)(1), a Schedule I drug has the following characteristics:

a.      The drug or other substance has a high potential for abuse.

. . .

5

b.      The drug or other substance has no currently accepted medical use in treatment in the United States.

c.      There is a lack of accepted safety for use of the drug or other substance under medical supervision.   Since marijuana and hashish are Schedule I controlled substances, their unauthorized distribution violates federal law. Pharmacies can only dispense medications "prescribed" by licensed medical practitioners.   The federal government classifies marijuana and hashish are Schedule I drugs, which means licensed medical practitioners cannot prescribe them.

8.      Through my training and experience, and my conversations with other law enforcement investigators, your Complaintant is familiar with Nevada "medical marijuana" laws and attempts to distribute marijuana through dispensaries.

9.      "Medical marijuana" has become an increasingly profitable business, particularly within the state and federal district of Nevada.   The Nevada Revised Statutes govern the medicinal use of marijuana under State law.   A review of the medical marijuana legislation reveals that, in addition to the prohibition against the distribution of marijuana pursuant to federal law, the Nevada Revised Statutes (NRS) also prohibit the delivery of marijuana for consideration.   Specifically, a review of the Nevada State Medical Marijuana Legislation (See, N.R.S. §453A et. sec., and Nevada Administrative Code (N.A.C. §453A et. sec.) reveals the following:

a.      An individual may apply for a Nevada State medical marijuana card upon submission of an application to the Health Division of the Nevada Department of Health and Human Services ("Division") which includes written documentation from the person's attending physician establishing that: (1) the person has been diagnosed with a chronic or debilitating medical condition; (2) the medical use of marijuana may mitigate the symptoms or effects of that condition; and (3) the attending physician has explained the possible risks and benefits of the medical use of marijuana. See, N.R.S. §453A.210.   Registry identification cards are valid for 12 months, at which point they must be renewed.   See, N.R.S. §453A.225.

1         b.      The recipient of a medical marijuana card may engage in the medical use of

2 marijuana ". . . as necessary for the exclusive benefit of a person to mitigate the symptoms or effects

3 of his or her chronic or debilitating medical condition." See, N.R.S. §453A.120.

4         c.      The issuance of a State of Nevada medical marijuana card exempts the holder

5 from state prosecution provided that their activities are in conformity with State law. Specifically, the

6 card holder may possess at one time not more than: (1) one ounce of usable marijuana; (2) three

7 mature marijuana plants; and (3) four immature marijuana plants. (N.R.S. 453A.200) Individuals

8 (including enumerated caregivers) who possess amounts in excess of these limits may establish an

9 affirmative defense to the Nevada State charge of possession, delivery or production of marijuana by

10 establishing, by a preponderance of the evidence, that the amount is medically necessary (as

11 determined by the person's attending physician) to mitigate the symptoms or effects of the person's

12 chronic or debilitating medical condition. (N.R.S. 453A.310)

13         d.      An applicant may elect to designate a primary caregiver at the time of

14 application. In such event, the applicant must submit a written, signed statement from the person's

15 physician attesting that the attending physician approves of the designation of the primary caregiver.

16 See, N.R.S. §453A.210(2)(e)(2). Upon designation, caregivers are then issued a serially numbered

17 registry identification card. See, N.R.S. §453A.220. Card holders are required to notify the Division

18 in the event that they elect to designate a new primary caregiver. Upon re designation of the primary

19 caregiver, the previous caregiver's card is then revoked. See, N.R.S. §453A.230.

20         e.      A designated primary caregiver in the state of Nevada means a person who

21 is at least eighteen (18) years of age or older and who ". . .has significant responsibility for managing

22 the well being of a person diagnosed with a chronic or debilitating medical condition. . ." See, N.R.S.

23 §453A.080

24         f.      A person may only have one designated primary caregiver at any one time.

25 See, N.R.S. §453A.250.

26

g.      A designated primary caregiver may not be the designated primary caregiver to more than one person. Therefore, a caregiver may only grow marijuana for the one individual that meets the aforementioned requirements. Furthermore, a person with a chronic or debilitating disease to whom a registry identification card has been issued may not be a designated primary caregiver. See, Nevada Administrative Code (NAC) §453.150. A designated primary caregiver may engage in the cultivation of marijuana for the benefit of the medical marijuana patient, subject to the restrictions set forth within the statutes.

h.      NRS 453A.300(1) states: "A person who holds a registry identification card issued to him or her pursuant to NRS 453A.220 or 453A.250 is not exempt from state prosecution for, nor may the person establish an affirmative defense to charges arising from, any of the following acts: . . . (f) Delivering marijuana for consideration to any person, regardless of whether the recipient lawfully holds a registry identification card issued by the Division or its designee pursuant to NRS 453A.220 or 453A.250."

i.      A person who holds a valid medical marijuana registry card may not engage in or assist in the medical use of marijuana in any public place or in any place open to the public or exposed to public view, or at any local detention facility, county jail, state prison or other correctional facility. See, N.R.S. 453A.300(d).

j.      There are no provisions within the law of the State of Nevada which recognize any other state's medical marijuana licenses. Thus, any person in possession of marijuana who possesses an out of state medical marijuana card is in violation of the Nevada Revised Statutes.

k.      Nothing within the Nevada State Medical Marijuana Act precludes federal prosecution of individuals for the possession or distribution of marijuana, in fact the State does not have that authority. Furthermore, the informational website maintained by the Nevada State Department of Health and Human Services specifically warns applicants that: "Issuance of a State of

8

1 Nevada Medical Marijuana Registry Card does not exempt the holder from prosecution under federal

2 law." See, http://health.nv.gov/PDFs/MMP/ImportantNotice.pdf

3      10.   Nothing within the Nevada State Medical Marijuana Act permits the establishment of

4 medical marijuana dispensaries.   Indeed, as noted previously, the provision of marijuana for

5 consideration is prohibited.

6      11.   Based upon your Complaintant's participation in this investigation, your Complaintant

7 has determined that "medical marijuana" dispensaries are being established throughout the jurisdiction

8 with increasing frequency due to the large potential for personal financial gain associated with such

9 businesses.  Often, purported "medical marijuana" establishments will attempt to create a cloak of

10 legitimacy through advertisements including large billboards and internet postings which encourage

11 potential customers to "get legal" in their consumption of marijuana.   Customers to such

12 establishments are often requested to designate the dispensary as a "primary caregiver" by completing

13 a written form.  However, as defined by Nevada law, a dispensary cannot be a primary caregiver, nor

14 can an entity be a primary caregiver to more than one person.  Such records are often maintained by

15 the establishments in an attempt to show quasi compliance with Nevada State law when in fact they

16 are direct evidence of its violation.  Storefront marijuana dispensaries are not recognized under

17 Nevada state law. Dispensaries that merely require patients to complete a form summarily designating

18 the business and/or owner as their primary caregiver and then offering marijuana in exchange for cash

19 "donations" are unlawful.

20      12.   Ongoing investigations have revealed that the internet and related websites are used to

21 promote "medical marijuana" and to market both doctors who will create recommendations in

22 exchange for monetary compensation and dispensaries where various marijuana and THC laced

23 products can be purchased.  While dispensaries often claim that they are requiring "donations" rather

24 than compensation in return for marijuana or marijuana laced products, other than occasional give

25 away's to first time customers and other promotional incentives, the dispensaries are simply for profit

26

businesses which require monetary consideration in return for their products.  Furthermore, prices within dispensaries are often many times higher than the relative street value of marijuana. Investigation has also revealed that the owners and/or operators of "medical marijuana" establishments are frequently accruing significant financial gain, which they then attempt to conceal due to the illicit nature of the financial transactions.

13.    Dispensaries are illegal in the state of Nevada because it is a "grow your own" state. Therefore it is illegal to sell medical marijuana in the state of Nevada. If you are a medical marijuana patient or care giver you must grow your own marijuana.   A person's medical marijuana license has a one year expiration from the date of issuance. The DMV will provide a medical marijuana license number to qualified individuals who have met the required standards set forth and issue an identification card that states the identity of the qualified individual along with an issue and expiration date.

14.    Based on my training and experience, your Complaintant has learned that medical marijuana dispensaries are retail storefronts that sell marijuana to customers, purportedly for medical reasons.  While the dispensaries frequently seek protection under state of Nevada medical marijuana laws by claiming to be "primary caregivers" for their customers, dispensaries are simply businesses operating to sell marijuana for profit, and do not "consistently assume responsibility for the housing, health, or safety" of their customers, as a "primary caregiver" is required to do.  Further, based on my training and experience, dispensaries are retail establishments that typically acquire the marijuana products they sell from third party vendors.  There is no state law in Nevada that allows for the production and sale of marijuana from third party vendors to dispensaries.

**PROBABLE CAUSE:**

15.    The statements contained in this complaint are based upon your Complaintant's personal participation in this investigation and information received from other law enforcement sources, oral and written reports about this investigation and others your Complaintant has received

1    from Task Force Officers (TFO'S), DEA Special Agents, Las Vegas Metropolitan Police Department

2    (LVMPD) Detectives and police officers in Las Vegas, Nevada, subpoenas, physical surveillance,

3    records checks, undercover purchases by law enforcement, recorded conversations by undercover law

4    enforcement personnel, community complaints, city business license information, internet and website

5    searches and your Complaintant's knowledge, training and experience, as well as that of other task

6    force officers, special agents, and local law enforcement officers also familiar with narcotics matters.

7    The present investigation involves the illegal distribution of marijuana through purported "medical

8    marijuana" dispensaries.  Since the initiation of the investigation regarding the individuals identified

9    herein, three related dispensaries have been identified, they are identified as: "Completely Legal",

10   "Completely Legal 2.0" and "Completely Legal 3.0".  "Completely Legal" closed in April of 2011,

11   but at this time, the other two locations remain open.

12   **I.**      **BUSINESS LICENSE INFORMATION:**

13        16.    A query of business license information from various public and governmental

14   databases revealed the following information regarding "Completely Legal".  The business was

15   located at 3655 S. Durango Avenue Suite #19, Las Vegas, Nevada, 89147, per the Clark County

16   Business Licensing Business Registration.  Under the "Describe in Detail the Nature of Your

17   Business" section was the following information:  Medical marijuana consultant / Co-operative.

18   Edmund SCHROBACK, D.O.B.: 6-3-1978, was listed as the Secretary and Jacob LILL, D.O.B.:

19   7-18-1986, was listed as the Treasurer.  The Nevada State Secretary of State database revealed that

20   Jacob LILL was listed as the President of Completely Legal with Edmund SCHROBACK listed as

21   Secretary and Treasurer.

22        17.    A query of business license information from various public and governmental

23   databases revealed the following information regarding COMPLETELY LEGAL 2.0.  The business

24   is located at 6401 N. Durango Avenue, Suite #120, Las Vegas, NV 89149, per the Las Vegas Business

25   License Application.  They have a current city business license under Temporary City License:

26

1   #M07-90557. Under the "Describe Your Specific Business Activity in Detail" section was the

2   following information: "A place for exchange and (sic.) medical marijuana in compliance with NRS

3   453A. No sale of food or snack items." The phone number for the business is listed as 702-862-6337.

4   Edmund SCHROBACK is listed as the Secretary of the business and Jacob LILL is listed as Manager

5   and Treasurer.

6        18.   A query of business license information from various public and governmental

7   databases revealed that Completely Legal 3.0 has not applied for and/or been issued a Clark County

8   Business License to operate within that jurisdiction.

9   **II.**      **SURVEILLANCE AND UNDERCOVER OPERATIONS**

10       March 3, 2011 Transaction (Completely Legal):

11        19.   On March 3, 2011 at approximately 6:57 pm., Las Vegas Metropolitan Police

12   Department (LVMPD) Det. R. Dockery, working in an undercover capacity, entered Completely Legal

13   located at 3655 S. Durango Suite #19, Las Vegas, NV 89147 in order to purchase an amount of

14   marijuana. Once inside, Det. R. Dockery was greeted by a white male adult employee of the business.

15   Det. R. Dockery completed paperwork and was then approached by a subject subsequently identified

16   as Christopher GREEN, D.O.B.: 08-03-1985. GREEN took Det. R. Dockery into the back room of

17   the business where he then met with a second subject, subsequently identified as Kyle LAIR, D.O.B.:

18   04-12-1985. In the back room, Det. R. Dockery observed approximately twelve to fifteen jars of

19   suspected marijuana inside a glass display case. GREEN then gave Det. R. Dockery a bag of

20   "medicated" hot cocoa and told him that this was being given to him because he was a first time

21   customer. LAIR then showed Det. R. Dockery the different strains of purported marijuana. Det. R.

22   Dockery chose to purchase an eighth of an ounce of a strain of marijuana called "Cat Piss." GREEN

23   then explained to Det. R. Dockery that the medicated lollipops in the business are a recommended

24   $5.00 donation. GREEN also told to Det. R. Dockery that the requested donation for the marijuana

25   is $60.00. Det. R. Dockery asked GREEN "How about $50.00?" GREEN did not respond to the

26

question and acted as though he was ignoring the question. Det. R. Dockery gave GREEN the LVMPD buy money at which point LAIR handed Det. R. Dockery a paper bag containing the purported marijuana and THC laced edibles. As Det. R. Dockery was exiting the business, he observed a display case containing over fifty suspected marijuana clones. GREEN told Det. R. Dockery that the clones are available for purchase at a recommended $20.00 to $40.00 donation. At approximately 7:18 p.m., Det. R. Dockery exited the business. Immediately following the transaction, Det. R. Dockery met with Det. G. King to notify him of his purchase.

20. Det. R. Dockery conducted an ODV field test on a portion of the substances purchased from GREEN and LAIR at 3655 S. Durango Suite # 19 Las Vegas, NV 89147. Det. R. Dockery was certified in October of 1998 by a representative of ODV to conduct this test. The plant material weighed 4.7 grams and tested positive for marijuana. The evidence was subsequently impounded by the LVMPD in accordance with their official policies and procedures. Det. G. King submitted a Forensic Laboratory Request so that an LVMPD certified Chemist could analyze the suspected THC laced lollipop and "medicated" cocoa. On May 25, 2011, LVMPD Chemist E. Cheesman confirmed the presence of THC in both items with weights of 14.88 grams and 27.35 grams respectively.

21. It should be noted that Completely Legal is located within 1,000 feet of the real property described as Desert Breeze Park. This park is located at 8425 Spring Mountain Road and is directly to the east across South Durango Avenue from the business. The park contains a public playground for the use of children.

March 15, 2011 Transaction (Completely Legal):

22. On March 15, 2011 at approximately 7:00 p.m., Las Vegas Metropolitan Police Department (LVMPD) Det. R. Dockery, working in an undercover capacity, entered Completely Legal located at 3655 S. Durango Suite #19, Las Vegas, Nevada, 89147, in order to purchase an amount of marijuana. Once inside, Det. R. Dockery was greeted by a white female adult employee of the business known only as "Melissa." Christopher GREEN asked Det. R. Dockery if he was looking for

1  anything in particular. Det. R. Dockery asked GREEN for an eighth of an ounce of a strain of

2  marijuana known as "Obama Kush." GREEN then proceeded into the back room and then called for

3  Det. R. Dockery to join him. GREEN then handed Det. R. Dockery a brown paper sack and told him

4  that it would be a $60.00 donation. Det. R. Dockery handed GREEN $60.00 of LVMPD buy money

5  and then exited the business. Immediately following the transaction, Det. R. Dockery met with Det.

6  G. King to notify him of his purchase.

7          23.     Det. R. Dockery conducted an ODV field test on a portion of the substance purchased

8  from GREEN at 3655 S. Durango Suite # 19 Las Vegas, NV 89147. The plant material weighed 3.6

9  grams and tested positive for marijuana. The evidence was subsequently impounded by the LVMPD

10  in accordance with their official policies and procedures.

11          March 16, 2011 Transaction (Completely Legal 2.0):

12          24.     On March 16, 2011 at approximately 6:45 p.m., Detective R. Splinter of the Las Vegas

13  Metropolitan Police Department (LVMPD), who was working in an undercover capacity, arrived at

14  Completely Legal 2.0, located at 6401 N. Durango Suite #120, Las Vegas, Nevada 89149. As Det.

15  Splinter approached the business, he observed two white male adults exit the business carrying

16  suspected marijuana plants. These white male adults were later positively identified by LVMPD Det.

17  G. King as Richard WHEATON, D.O.B.: 12-06-1984 a.k.a. "Richie" and Jacob LILL, D.O.B.:

18  7-18-1986. Once inside, Det. Splinter observed WHEATON and LILL re-enter the business. After

19  completing some paperwork, WHEATON advised Det. Splinter to follow him into a back room. In

20  this back room, Det. Splinter observed numerous glass jars containing different strains of suspected

21  marijuana. Det. Splinter also observed suspected THC laced edibles to include lollipops, mashed

22  potatoes, and lemon lime syrup. Det. Splinter told WHEATON that he wished to purchase an eighth

23  of an ounce of the "Obama" strain of marijuana. WHEATON told Det. Splinter that it would cost

24  $60.00 in the way of a "donation." WHEATON stated to Det. Splinter that since he was a first time

25  customer, he could also choose a free gram. Det. Splinter chose the "Grape Cough" strain. Det.

26

14

Splinter also asked WHEATON for a THC laced lollipop.  WHEATON explained that it would be a five dollar "donation" for the lollipop.  Det. Splinter gave WHEATON $65.00 of LVMPD buy money in exchange for the purported marijuana and THC laced edible. At approximately 7:13 p.m., Det. Splinter exited the business, entered his vehicle and departed the area.  Immediately following the operation, Det. G. King met with Det. R. Splinter who notified him of his purchase.

25.    Detective R. Splinter conducted an ODV field test on a portion of the substances purchased from WHEATON inside 6401 N. Durango Avenue Suite #120, Las Vegas, Nevada 89149. Detective R. Splinter was certified by a representative of ODV in March 1997 to conduct the aforementioned field test. The plant material weighed 3.6 grams and 1.3 grams respectively and tested positive for the controlled substance marijuana.  The evidence was subsequently impounded by LVMPD in accordance with their official policies and procedures. Det. G. King submitted a Forensic Laboratory Request so that an LVMPD certified Chemist could analyze the suspected THC laced lollipop.  On June 27, 2011, LVMPD Chemist J. Altether confirmed the presence of THC with a weight of 15.88 grams.

March 25, 2011 Transaction (Completely Legal 2.0):

26.    On March 25, 2011, LVMPD Detective R. Splinter, of the Las Vegas Metropolitan Police Department (LVMPD), who was working in an undercover capacity, went to Completely Legal 2.0, located at 6401 N. Durango Suite #120, Las Vegas, NV 89149. The purpose of the visit was to purchase marijuana from the business.  At approximately 6:40 p.m., Det. Splinter arrived at the business and was greeted by Richard WHEATON.  Det. Splinter handed WHEATON his Medical Marijuana card at which time WHEATON told Det. Splinter to take a seat in the lobby area. A short time later, an individual subsequently identified as Michael SAVINO, D.O.B.: 10-26-1985, asked Det. Splinter to follow him into a back room.  Within that room, Det. Splinter observed a glass display cabinet with numerous large clear glass jars containing different strains of purported marijuana on the top shelf. The middle shelf contained purported THC edibles (ie: suckers, mashed potatoes, lemon

1  lime syrup), kief, hash and hash concentrate. The bottom shelf contained numerous plastic Ziploc bags

2  and purported marijuana. The back wall had a metal shelving unit which contained (3) clone trays of

3  purported marijuana plants.  Det. Splinter advised SAVINO that he wanted to try an eighth of an

4  ounce of the strain "Honey Bee".  Det. Splinter observed SAVINO put on a pair of latex gloves and

5  weigh out the purported marijuana on a digital scale. Det. Splinter observed SAVINO put the

6  purported marijuana in a plastic Ziploc type bag and labeled it accordingly. Det. Splinter asked

7  SAVINO if he could try a THC laced sucker. Det. Splinter observed SAVINO place the purported

8  marijuana and the THC laced sucker in a paper bag. Det. Splinter handed SAVINO $65.00 of LVMPD

9  buy money in exchange for the purported marijuana and THC laced edible. As Det. Splinter exited the

10  room, he observed a female standing next to WHEATON and asked for her name. The female

11  introduced herself as "Ana" (later identified as Ana MARTINEZ, D.O.B.: 5-27-1990). WHEATON

12  advised Det. Splinter that "Ana" works at the other Completely Legal and was at this location to help

13  out. Det. Splinter then exited the business.  Immediately following the operation, Det. G. King met

14  with Det. R. Splinter who notified him of his purchase.

15      27.   Detective R. Splinter conducted an ODV field test on a portion of the suspected

16  marijuana purchased from SAVINO inside 6401 N. Durango Avenue Suite #120, Las Vegas, Nevada

17  89149. The substance weighed 3.7 grams and tested positive for the controlled substance marijuana.

18  The evidence was subsequently impounded by LVMPD in accordance with their official policies and

19  procedures.  Det. G. King submitted a Forensic Laboratory Request so that an LVMPD certified

20  Chemist could analyze the suspected THC laced lollipop.  On June 17, 2011, LVMPD Chemist E.

21  Cheesman confirmed the presence of THC with a weight of 17.06 grams.

22      March 30, 2011 Transaction (Completely Legal):

23      28.   On March 30, 2011 at approximately 7:16 p.m., Las Vegas Metropolitan Police

24  Department (LVMPD) Det. R. Dockery, working in an undercover capacity, entered Completely Legal

25  located at 3655 S. Durango Suite #19 Las Vegas, NV 89147 in order to purchase an amount of

26

16

1   marijuana. Once inside, Det. R. Dockery met with a white female adult known only as "Melissa" and

2   gave her his undercover identification. Kyle LAIR then escorted Det. R. Dockery into the back room.

3   Det. R. Dockery then chose a strain of marijuana called "AK-47." LAIR then asked Det. R. Dockery

4   what kind of donation he would like to make and Det. R. Dockery told him an eighth of an ounce.

5   Det. R. Dockery then asked to pick up a THC laced lollipop and LAIR explained to him that it is a

6   $5.00 donation. Det. R. Dockery gave LAIR $65.00 of LVMPD buy money. As Det. R. Dockery was

7   exiting the business, he observed a subject subsequently identified as Edmund SCHROBACK

8   standing by the front door talking on a cell phone. Immediately following the operation, Det. G. King

9   met with Det. R. Dockery who notified him of his purchase.

10          29.   Det. R. Dockery conducted an ODV field test on a portion of the suspected marijuana

11   purchased from LAIR at 3655 S. Durango Suite # 19 Las Vegas, NV 89147. The plant material

12   weighed 3.7 grams and tested positive for marijuana. The evidence was subsequently impounded by

13   the LVMPD in accordance with their official policies and procedures. Det. G. King submitted a

14   Forensic Laboratory Request so that an LVMPD certified Chemist could analyze the suspected THC

15   laced lollipop. On June 15, 2011, LVMPD Chemist E. Cheesman confirmed the presence of THC

16   with a weight of 12.95 grams.

17          March 30, 2011 Transaction (Completely Legal 2.0):

18          30.   On March 30, 2011 at approximately 6:27 p.m., Detective R. Splinter of the Las Vegas

19   Metropolitan Police Department (LVMPD), who was working in an undercover capacity, arrived at

20   Completely Legal 2.0, located at 6401 N. Durango Suite #120, Las Vegas, NV 89149. Det. R. Splinter

21   entered the business and was greeted by WHEATON. Det. R. Splinter showed WHEATON his State

22   of Nevada Medical Marijuana card. WHEATON asked to see the card again and stated that he was

23   not used to seeing marijuana cards because everyone hands him their doctor's recommendations. A

24   short time later, SAVINO entered the room and asked Det. Splinter to follow him into a back room.

25   Det. Splinter observed in the room a glass display cabinet with what appeared to be numerous large

26

17

clear glass jars containing different strains of purported marijuana on the top shelf. The middle shelf contained purported THC edibles (ie: suckers, mashed potatoes, lemon lime syrup), kief, hash and hash concentrate. The bottom shelf contained numerous plastic Ziploc bags and purported marijuana. The back wall had a metal shelving unit which contained (3) clone trays with purported marijuana plants. Det. Splinter asked for an eighth of an ounce of the marijuana strain called "LA Women." SAVINO weighed the substance, placed it in a Ziploc type bag and labeled it accordingly. Det. R. Splinter also asked for a THC laced lollipop. Det. R. Splinter then exchanged $65.00 of LVMPD buy money for the marijuana and THC laced lollipop from SAVINO.  Immediately following the operation, Det. G. King met with Det. R. Splinter who notified him of his purchase.

31.    Detective R. Splinter conducted an ODV field test on a portion of the purported marijuana purchased from SAVINO inside 6401 N. Durango Avenue Suite #120, Las Vegas, Nevada 89149. The substance weighed 3.6 grams and tested positive for the controlled substance marijuana. The evidence was subsequently impounded by LVMPD in accordance with their official policies and procedures. Det. G. King submitted a Forensic Laboratory Request so that an LVMPD certified chemist could analyze the suspected THC laced lollipop.  On June 17, 2011, LVMPD Chemist E. Cheesman confirmed the presence of THC with a weight of 18.02 grams.

April 13, 2011 Search Warrant Service (Completely Legal):

32.    On April 13, 2011, the LVMPD SWAT Team served a State of Nevada Search warrant at Completely Legal located at 3655 S. Durango Suite #19 Las Vegas, NV 89147. Det. G. King was the affiant of this search warrant which was signed by the Honorable Judge George.  During the service of this search warrant, Edmund SCHROBACK, Kyle LAIR and Richard WHEATON were all taken into custody after being called out of the business. Once the business was secured, detectives were assigned to conduct a thorough search. During this search, detectives located 4,570.3 grams of marijuana 2,158.9 grams of THC laced edibles, 3.3 grams of hash / hash oil and digital scales.

April 13, 2011 Search Warrant Service (Completely Legal 2.0):

33.     On April 13, 2011, the LVMPD SWAT Team served a State of Nevada search warrant at Completely Legal 2.0 located at 6401 N. Durango Suite #120. Det. G. King was the affiant of this search warrant which was signed by the Honorable Judge George. During the service of this search warrant, SAVINO and a female identified as Ana MARTINEZ, D.O.B.: 5-27-1990, were taken into custody by SWAT officers. Once the business was secured, Detectives were assigned to conduct a thorough search. During the search of the business, Detectives located various items which included: 5,405.3 grams of marijuana, 275.2 grams of marijuana plants (200 clones), 183.2 grams of hash and hash oil, 2,094.3 grams of THC laced edibles and digital scales.

34.     Following the search warrant service at Completely Legal 2.0, Det. G. King reviewed paperwork evidence recovered from the business. Det. King noted numerous items of evidentiary value:

a.      A "Completely Legal Strain Report" documenting the strains broken down into Indicas, Sativas and Hybrids of the two. Each strain listed had a description of the tastes, feelings induced and mood effects of each strain. Some of the reviews included statements such as: "great high," "mass euphoria," "will knock you back in your seat," and "great to medicate before going out or just to kick start a good mood."

b.      Daily sales receipts for Completely Legal 2.0 documenting each purchase, price and employee who sold the items. Some included the last name, a last initial or a moniker. Some had notes written at the bottom denoting "free gifts okayed by Jacob LILL or Edmund SCHROBACK," "customers who haggled over the suggested donation," "veterans discounts," and "employee sales to employees who did not possess a Nevada Medical Marijuana Card."

c.      A printed e-mail from an advisement group to Edmund SCHROBACK in reference the opening of 3.0 and interviews.

d.      An invoice for scales addressed to Completely Legal, Jacob LILL.

1       e.     A time sheet, earnings statement and Nevada Attending Physicians Statement in the

2 name of Ana MARTINEZ.

3       f.     A letter from Completely Legal and Jake LILL to the Las Vegas Business Review

4 listing terms for access to Completely Legal for the media.

5       <u>Search Warrant Service (3390 Antique Rose - LILL's Residence):</u>

6       35.     On April 13, 2011, the LVMPD SWAT Team served a State of Nevada search warrant

7 at 3390 Antique Rose Drive. Det. G. King was the affiant of this search warrant which was signed

8 by the Honorable Judge George. Just prior to the execution of the warrant, surveilling detectives

9 observed Jacob LILL exit the residence and enter his black Mercedes bearing Colorado license plates

10 643-VOZ. A vehicle stop was initiated at the intersection of Town Center and I-215. LILL was taken

11 into custody on state charges. Once the residence was secured, detectives were assigned to conduct

12 a thorough search. Detectives located 480 grams of marijuana, 38 grams of hash / hash oil, 19,668

13 grams of THC laced edibles, digital scales and $7,432.00 US currency. Your affiant also located a

14 24/7 Private Vault receipt listing box #1438 in LILL's master bedroom closet.

15       36.     On April 13, 2011, during a search incident to arrest of LILL's person, he was found

16 to be in possession of two sets of very distinct keys. Vice Det. Hui looked at these keys. Det. Hui has

17 extensive experience with "24/7 Private Vaults" in her capacity as a vice detective, she immediately

18 recognized these keys to be consistent with those used at "24/7 Private Vaults", which is located at

19 3110 E. Sunset Las Vegas, NV. Det. G. King authored Nevada State telephonic search warrants for

20 the 24/7 Private Vaults and discovered that the two sets of keys opened boxes #1438 and #0081.

21 Between the two boxes, $81,475.00 U.S. currency was seized. This money is believed to represent

22 proceeds from the illegal sale of marijuana.

23       <u>April 29, 2011 Transaction (Completely Legal 2.0):</u>

24       37.     On April 29, 2011 at approximately 12:50 p.m., Detective R. Splinter of the Las Vegas

25 Metropolitan Police Department (LVMPD), who was working in an undercover capacity, arrived at

26

Completely Legal 2.0, located at 6401 N. Durango Suite #120, Las Vegas, NV 89149. Det. R. Splinter entered the business and observed Michael SAVINO and Richard WHEATON sitting on the couch. Ana MARTINEZ was seated behind the reception desk. MARTINEZ verified that Det. R. Splinter was registered in the computer system at which time SAVINO told Det. R. Splinter to follow him into the back room. Inside the room, Det. Splinter observed a glass display cabinet with what appeared to be numerous large clear glass jars containing different strains of purported marijuana. The bottom shelf contained purported THC edibles (e.g.: chocolate). The back wall had a metal shelving unit which contained clone trays and Dixie cups with purported marijuana plants. SAVINO stated that their supply was low due to the recent Police raids. Det. Splinter asked for an eighth of an ounce of the marijuana strain called "Black Diamond." SAVINO weighed the substance, placed it in a Ziploc type bag and labeled it accordingly. Det. R. Splinter also asked for a THC laced chocolate edible. SAVINO then explained to Det. R. Splinter that the suggested donation would be $75.00. Det. R. Splinter handed SAVINO $80.00 of LVMPD buy money and SAVINO gave him $5.00 in change, the marijuana and THC laced edible. Immediately following the operation, Det. G. King met with Det. R. Splinter who notified him of his purchase.

38.   Detective R. Splinter conducted an ODV field test on a portion of the purported marijuana purchased from SAVINO inside 6401 N. Durango Avenue Suite #120, Las Vegas, Nevada 89149. The substance weighed 3.5 grams and tested positive for the controlled substance marijuana. The evidence was subsequently impounded by LVMPD in accordance with their official policies and procedures. Det. G. King submitted a Forensic Laboratory Request so that an LVMPD certified Chemist could analyze the suspected THC laced chocolate. On June 21, 2011, LVMPD Chemist E. Cheesman confirmed the presence of THC with a weight of 12.91 grams.

May 12, 2011 Transaction (Completely Legal 2.0):

39.   On May 12, 2011 at approximately 6:13 p.m., Detective R. Splinter of the Las Vegas Metropolitan Police Department (LVMPD), who was working in an undercover capacity, arrived at

1   Completely Legal 2.0, located at 6401 N. Durango Suite #120, Las Vegas, Nevada 89149. Det. R.

2   Splinter entered the business and observed Richard WHEATON sitting on the couch. A third-part

3   female (herein identified as UF-1) was seated behind the reception desk. UF-1 verified that Det. R.

4   Splinter was registered in the computer system. A short time later, a male subsequently identified as

5   Kyle LAIR, D.O.B.: 4-12-1985, made contact with Det. R. Splinter and asked that he follow him to

6   the back room. Det. Splinter observed in the room a glass display cabinet with what appeared to be

7   numerous large clear glass jars containing different strains of purported marijuana on the top shelf.

8   The bottom shelf contained purported THC edibles (e.g.: chocolate.) The back wall had a metal

9   shelving unit which contained clone trays and Dixie cups with purported marijuana plants. LAIR

10  asked Det. R. Splinter what he would like to purchase. Det. Splinter asked for an eighth of an ounce

11  of the marijuana strain called "Cat Piss." Det. R. Splinter also stated that he wanted to purchase a

12  piece of THC laced white chocolate. LAIR weighed the substance, placed it in a Ziploc type bag and

13  labeled it accordingly. LAIR then explained to Det. R. Splinter that the suggested donation would be

14  $75.00. Det. R. Splinter handed LAIR $75.00 of LVMPD buy money and LAIR gave him the

15  marijuana and THC laced edible. Immediately following the operation, Det. G. King met with Det.

16  R. Splinter who notified him of his purchase.

17         40.   Detective R. Splinter conducted an ODV field test on a portion of the purported

18  marijuana purchased from LAIR inside 6401 N. Durango Avenue Suite #120, Las Vegas, Nevada

19  89149. The substance weighed 3.6 grams and tested positive for the controlled substance marijuana.

20  The evidence was subsequently impounded by LVMPD in accordance with their official policies and

21  procedures. Det. G. King submitted a Forensic Laboratory Request so that an LVMPD certified

22  Chemist could analyze the suspected THC laced chocolate. On June 21, 2011, LVMPD Chemist J.

23  Althether confirmed the presence of THC with a weight of 12.97 grams.

24   .  .  .

25   .  .  .

26

1

<u>May 19, 2011 Transaction (Completely Legal 2.0)</u>

2    41.    On May 19, 2011 at approximately 2:04 p.m., Detective R. Splinter of the Las Vegas

3  Metropolitan Police Department (LVMPD), who was working in an undercover capacity, arrived at

4  Completely Legal 2.0, located at 6401 N. Durango Suite #120, Las Vegas, NV 89149. Det. R. Splinter

5  entered the business and observed Kyle LAIR and Michael SAVINO behind the reception desk. LAIR

6  verified that Det. R. Splinter was registered in the computer system. SAVINO asked Det. R. Splinter

7  to follow him into the back room.  In the room, Det. Splinter observed a glass display cabinet with

8  what appeared to be numerous large clear glass jars containing different strains of purported marijuana

9  on the top shelf. The bottom shelf contained purported THC edibles (e.g.: chocolate and dehydrated

10  edible THC products.)  The back wall had a metal shelving unit which contained clone trays with

11  approximately 20-30 purported marijuana plants.  SAVINO asked Det. R. Splinter what kind of

12  marijuana strain he was looking for.  Det. Splinter explained to SAVINO that the strain of marijuana

13  did not matter as long as it got him high.  Det. Splinter then asked for an eighth of an ounce of the

14  marijuana strain called "Plane Wreck." Det. R. Splinter also stated that he wanted to purchase a piece

15  of THC laced white chocolate. SAVINO weighed the substance, placed it in a Ziploc type bag and

16  labeled it accordingly.  SAVINO then explained to Det. R. Splinter that the price would be $75.00.

17  Det. R. Splinter handed SAVINO $75.00 of LVMPD buy money and SAVINO gave him the

18  marijuana and THC laced edible.  Immediately following the operation, Det. G. King met with Det.

19  R. Splinter who notified him of his purchase.

20    42.    Detective R. Splinter conducted an ODV field test on a portion of the purported

21  marijuana purchased from LAIR inside 6401 N. Durango Avenue Suite #120, Las Vegas, Nevada

22  89149. The substance weighed 3.7 grams and tested positive for the controlled substance marijuana.

23  The evidence was subsequently impounded by LVMPD in accordance with their official policies and

24  procedures.  Det. G. King submitted a Forensic Laboratory Request so that an LVMPD certified

25

26

1    Chemist could analyze the suspected THC laced chocolate.  On June 13, 2011, LVMPD Chemist K.

2    Narechania confirmed the presence of THC with a weight of 12.62 grams.

3       June 24, 2011 Transaction (Completely Legal 2.0):

4       43.    On June 24, 2011 at approximately 12:56 p.m., Detective R. Splinter of the Las Vegas

5    Metropolitan Police Department (LVMPD), who was working in an undercover capacity, arrived at

6    Completely Legal 2.0, located at 6401 N. Durango Suite #120, Las Vegas, NV 89149. Det. R. Splinter

7    entered the business and observed a third party female (herein identified as "UF-2") seated behind the

8    reception desk. UF-2 verified that Det. R. Splinter was registered in the computer system.  Richard

9    WHEATON then exited the dispensary room asked Det. R. Splinter to follow him into the back room.

10   In the dispensary room, Det. Splinter observed a glass display cabinet with what appeared to be

11   numerous large clear glass jars containing different strains of purported marijuana on the top shelf.

12   The bottom shelf contained purported THC edibles (ie: chocolate and dehydrated edible THC

13   products.) The back wall had a metal shelving unit which contained clone trays with approximately

14   20-30 purported marijuana plants.  Det. Splinter engaged in small talk with WHEATON, who

15   explained to Det. R. Splinter that Completely Legal 3.0 would be opening soon. Det. R. Splinter then

16   asked for an eighth of an ounce of marijuana. WHEATON weighed the purported marijuana, placed

17   it in a Ziploc type bag and labeled it accordingly.  WHEATON then advised Det. R. Splinter that the

18   price would be $60.00.  Det. R. Splinter handed WHEATON $60.00 of LVMPD buy money and

19   WHEATON gave him the marijuana.  Immediately following the operation, Det. G. King met with

20   Det. R. Splinter who notified him of his purchase.

21       44.    Detective R. Splinter conducted an ODV field test on a portion of the purported

22   marijuana purchased from LAIR inside 6401 N. Durango Avenue Suite #120, Las Vegas, Nevada

23   89149. The substance weighed 4.9 grams and tested positive for the controlled substance marijuana.

24   The evidence was subsequently impounded by LVMPD in accordance with their official policies and

25   procedures.

26

June 24, 2011 Transaction (Completely Legal 3.0):

45.   On June 24, 2011 at approximately 2:25 p.m., Detective R. Splinter of the Las Vegas Metropolitan Police Department (LVMPD), who was working in an undercover capacity, arrived at Completely Legal 3.0, located at 3650 S. Eastern Avenue Suite #100, Las Vegas, NV 89169. Det. R. Splinter entered the business and observed an adult female (herein identified as UF-3), seated behind the reception desk. UF-3 verified that Det. R. Splinter was registered in the computer system. A male adult subsequently identified as Christopher GREEN, D.O.B.: 8-3-1985, made contact with Det. R. Splinter and advised the undercover detective to follow him into the back room.  In the dispensary room, Det. Splinter observed a glass display cabinet with what appeared to be numerous large clear glass jars containing different strains of purported marijuana on the shelves.  Det. R. Splinter then asked for an eighth of an ounce of the strain of marijuana called "Cookie Dough Kush."  GREEN weighed the substance, placed it in a Ziploc type bag and labeled it accordingly.  GREEN then advised Det. R. Splinter that the price would be $60.00.  Det. R. Splinter handed GREEN $60.00 of LVMPD buy money and GREEN gave him the marijuana.  Immediately following the operation, Det. G. King met with Det. R. Splinter who notified him of his purchase.

46.   Detective R. Splinter conducted an ODV field test on a portion of the purported marijuana purchased from GREEN inside 3650 S. Eastern Avenue Suite #100, Las Vegas, Nevada 89169. The substance weighed 5.5 grams and tested positive for the controlled substance marijuana. The evidence was subsequently impounded by LVMPD in accordance with their official policies and procedures.

July 6, 2011 Transaction (Completely Legal 3.0):

47.   On July 6, 2011 at approximately 6:34 p.m., Detective R. Splinter of the Las Vegas Metropolitan Police Department (LVMPD), who was working in an undercover capacity, arrived at Completely Legal 3.0, located at 3650 S. Eastern Avenue Suite #100, Las Vegas, NV 89169. Det. R. Splinter entered the business and observed UF-3 seated behind the reception desk. UF-3 verified that

1   Det. R. Splinter was registered in the computer system. A male adult subsequently identified as

2   Christopher GREEN, D.O.B.: 8-3-1985, made contact with Det. R. Splinter and advised him to follow

3   him into the back room. Inside the dispensary room, Det. Splinter observed a glass display cabinet

4   with what appeared to be numerous large clear glass jars containing different strains of purported

5   marijuana. Det. R. Splinter also observed 10-15 small purported marijuana plants on a metal shelving

6   rack. Det. R. Splinter then asked for an eighth of an ounce of marijuana. GREEN weighed the

7   substance, placed it in a Ziploc type bag and labeled it accordingly. GREEN then advised Det. R.

8   Splinter that the price would be $60.00. Det. R. Splinter handed GREEN $60.00 of LVMPD buy

9   money and GREEN gave him the marijuana. Immediately following the operation, Det. G. King met

10   with Det. R. Splinter who notified him of his purchase.

11       48.   Detective R. Splinter conducted an ODV field test on a portion of the purported

12   marijuana purchased from GREEN inside 3650 S. Eastern Avenue Suite #100, Las Vegas, Nevada

13   89169. The substance weighed 5.2 grams and tested positive for the controlled substance marijuana.

14   The evidence was subsequently impounded by LVMPD in accordance with their official policies and

15   procedures.

16       July 22, 2011 Transaction (Completely Legal 3.0):

17       49.   On July 22, 2011, at approximately 7:13 p.m., LVMPD Det. J. Grimmett, who was

18   working in an undercover capacity, arrived at Completely Legal 3.0 located at 3650 S. Eastern Suite

19   #100 Las Vegas, NV 89169. Det. J. Grimmett was in possession of a fraudulent Attending Physician's

20   Statement. This Attending Physician's Statement was completely fabricated by LVMPD detectives

21   and none of the information on the paperwork was verifiable as being true or accurate. Once inside

22   the business, Det. J. Grimmett was greeted by UF-1 and Christopher GREEN. Det. J. Grimmett

23   provided the fraudulent Attending Physician's Statement to UF-1 who attempted to contact the doctor

24   listed on the paperwork. After failing to contact anyone regarding the paperwork, unknown female,

25   advised GREEN of this fact and then handed Det. J. Grimmett a packet of paperwork to complete.

26

1  GREEN and another white male adult known only as "Alex" escorted Det. J. Grimmett into the back

2  room.  Inside this room, Det. J. Grimmett observed a glass case containing THC laced edibles and

3  marijuana. GREEN explained to Det. J. Grimmett that these items were available to people who wish

4  to make a "donation."  GREEN also stated that since Det. J. Grimmett was a first time customer, he

5  would be provided with a free THC laced cookie.  Det. J. Grimmett then handed $60.00 of LVMPD

6  buy money to GREEN for an eighth of an ounce of a strain of marijuana called "Sour Diesel."  Both

7  GREEN and "Alex" then gave Det. J. Grimmett a tour of the facility.  Det. J. Grimmett then left the

8  business.  Immediately following the operation, Det. J. Grimmett met with Det. R. Dockery and

9  notified him of the purchase.

10       50.   Det. J. Grimmett conducted an ODV field test on a portion of the plant substance

11  purchased from GREEN at Completely Legal 3.0. Det. J. Grimmett was certified in February of 2001

12  by a representative of ODV to conduct this test. The substance weighed 4.3 grams and tested positive

13  for marijuana. The evidence was subsequently impounded as evidence in accordance with LVMPD

14  policies and procedures.

15       51.   Your Complaintant, based on his training and experience, the facts of this case and the

16  knowledge and experiences conveyed to him by other law enforcement officers believes that the

17  Completely Legal franchise (Completely Legal, Completely Legal 2.0 and Completely Legal 3.0) is

18  first and foremost a for-profit drug trafficking enterprise.  This is evidenced by the manner in which

19  undercover officers have been able to purchase marijuana inside all three locations, the purveyance

20  of marijuana edibles, the names of the marijuana strains available for sale at the establishment, and

21  the substantial amount of currency that has been seized in connection with this investigation.

22                              **CONCLUSION**

23       52.   Based on the foregoing, and on your Complainant's training and experience, your

24  Complainant believes that probable cause exists to believe that Jacob LILL, Edmund SCHROBACK,

25  Richard WHEATON, Kyle LAIR, Christopher GREEN, Michael SAVINO and Ana MARTINEZ have

26     .   .   .

1  engaged in a conspiracy to illegally distribute marijuana, in violation of, *inter alia,* Title 21 United

2  States Code, Sections 846 and 841, *et. sec.*, and have committed other criminal acts during and in

3  relation to that conspiracy, as alleged herein.

4

5

6  Erik Dockery, Task Force Officer
   Drug Enforcement Administration

7

8  SUBSCRIBED and SWORN to before me

9  this 27th day of July, 2011

10

11

12  UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26